IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KENNETH BEVINS, et al.,

           Plaintiffs,

v.                                CIVIL ACTION NO.  2:13-cv-24264

APOGEE COAL COMPANY, LLC,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the Defendant's Motion for Summary Judgment [Docket 78]. For the reasons set forth below, the motion is **GRANTED**.

**I. Background**

Only a short summary of the pertinent facts is necessary for this opinion. This case arises out of an accident that occurred on October 8, 2012. Plaintiff Kenneth Bevins was employed as a rock truck driver for the defendant, Apogee Coal Company, LLC ("Apogee"). On the day of the accident, Mr. Bevins was using a Komatsu 685E truck to load and dump material. Komatsu 685E trucks have a bed that is raised and lowered by hydraulic cylinders. Eight loads into his shift, the cylinders on Mr. Bevins' truck overextended, causing the bed to fall on the driver's cab. The freefalling bed caused a fire to start. To escape the fire, Mr. Bevins jumped out of the cab eleven and a half feet to the ground. Mr. Bevins sustained injuries as a result of his jump, which the plaintiffs allege are permanent. Plaintiff Victoria Bevins, Mr. Bevins' spouse, alleges loss of

1

consortium due to her husband's accident.

Komatsu 685E trucks have limit switches, which are meant to prevent the trucks' cylinders from overextending. These trucks are originally made with magnetic limit switches, yet, at some point, the defendant decided to replace their trucks' magnetic switches with mechanical limit switches. Each kind of switch uses a different method to detect movement. In addition, the defendant's Komatsu 685E trucks initially contained 6 bolt pattern cylinders. According to the plaintiffs, the defendant replaced some of its trucks' 6 bolt pattern cylinders with 12 bolt pattern cylinders in response a Mine Safety and Health Administration ("MSHA") Safety Alert advising mines to do so. (*See* Pls.' Exhibit 1 [Docket 88-1], at 1). At the time of his accident, Mr. Bevins' truck still featured 6 bolt pattern cylinders.

The plaintiffs allege that there had been several prior reports of overextending cylinders in 685E trucks before Mr. Bevins' accident, including reports and litigation involving the same truck that he was driving on October 8th. They note that Mr. Bevins reported mechanical problems concerning the truck on the day of the accident and that the defendant supplied an electrician to address the issue.

The defendant has workers' compensation coverage, and the plaintiffs bring this action pursuant to West Virginia's deliberate intention exception. W. Va. Code § 23-4-2(d)(2).

## II. Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. Discussion

Under West Virginia law, an employer that contributes to the workers' compensation fund "is not liable to respond in damages at common law or by statute for the injury or death of any employee." W. Va. Code § 23-2-6. However, an employer loses this immunity "if the employer or person against whom liability is asserted acted with 'deliberate intention.'" W. Va. Code § 23-4-2(d)(2). An employer has acted with "deliberate intention" if "all of the following facts are proven":

    (A)    That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

    (B)    That the employer, prior to the injury, had actual knowledge of the existence of the specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by the specific unsafe working condition;

3

> (C) That the specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business, which statute, rule, regulation, or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;
>
> (D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C), inclusive, of this paragraph, the employer nevertheless intentionally thereafter exposed an employee to the specific unsafe working condition; and
>
> (E) That the employee exposed suffered serious compensable injury or compensable death as defined in section one, article four, chapter twenty-three whether a claim for benefits under this chapter is filed or not as a direct and proximate result of the specific unsafe working condition.

W. Va. Code § 23-4-2(d)(2)(ii)(A)-(E). A "court shall dismiss the action upon motion for summary judgment if it finds, pursuant to rule 56 of the rules of civil procedure that one or more of the[se] facts . . . do not exist[.]" W. Va. Code § 23-4-2(d)(2)(iii)(B). Therefore, "'in order to withstand a motion for summary judgment, a plaintiff must make a *prima facie* showing of dispute on each of the five factors'" above. *Coe v. Outback Steakhouse of Florida, LLC*, 2013 WL 140107, Civil Action No. 1:11-cv-113, at *2 (N.D. W. Va. Jan. 10, 2013) (J. Keeley) (citations omitted).

Here, the plaintiffs allege that the defendant acted with deliberate intention in regards to Mr. Bevins' accident. However, the defendant argues that summary judgment is proper because there is no genuine dispute of material fact as to the five factors above. The defendant focuses its argument on subparagraphs (A), (B), and (C) of the statute.

For the reasons explained below, I **GRANT** the defendant's motion for summary judgment. I **FIND** that there is no genuine dispute of material fact as to subparagraph (C). W. Va.

4

Code § 23-4-2(d)(2)(ii)(C). Since I need only find that one of the five factors meets the standard for summary judgment, I need not address the parties' arguments concerning the existence of material facts as to subparagraphs (A), (B), (D), or (E). "That the Plaintiffs may have a fairly good case considering only the other four facts is of no moment. The statute leaves no room for flexibility; the Legislature intended all five facts to be proven." *Greene v. Carolina Freight Carriers*, 663 F. Supp. 112, 115 (S. D. W. Va. 1987) (J. Haden).[1]

**A. Violation of Federal or State Safety Rule or Industry Safety Standard**

The defendant argues that there is no genuine dispute of material fact as to subparagraph (C). W. Va. Code § 23-4-2(d)(2)(ii)(C). Subparagraph (C) can be broken down into two requirements. First, the specific unsafe working condition must have been a violation of either (1) a state safety statute, rule or regulation, (2) a federal safety statute, rule or regulation, or (3) "a commonly accepted and well-known safety standard within the industry or business of the employer, as demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business." W. Va. Code § 23-4-2(d)(2)(ii)(C). Second, such statute, rule, regulation, or standard must have been "specifically applicable to the particular work and working condition involved," as opposed to "generally requiring safe workplaces, equipment or working conditions." W. Va. Code § 23-4-2(d)(2)(ii)(C).

**1. Specific Unsafe Working Condition**

It is first necessary to identify the specific unsafe working condition that the plaintiffs

---

[1] In *Greene*, the court analyzed an older version of West Virginia's deliberate intent statute. *See Greene*, 663 F. Supp. at 114. The only change to subparagraph (C) is the phrase adding that an alleged industry standard must be "demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business." W. Va. Code § 23-4-2(d)(2)(ii)(C). This difference does not affect my application of *Greene* here.

allege in this case. In its motion, the defendant claims that the plaintiffs' liability expert "identified two specific unsafe working conditions," namely (1) "changing the OEM magnetic limit switch to the mechanical arm switch" and (2) "changing the bed" on the truck which allegedly occurred around 2005. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem. in Supp.") [Docket 79], at 8). However, in their response under the section entitled "Specific Unsafe Working Condition," the plaintiffs state that "[t]he unsafe working condition is overextension of 6 bolt cylinders causing the truck bed to free fall." (Pls.' Mem. of Law in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Resp.") [Docket 88], at 15). I defer to the plaintiffs' statements concerning their allegations.

At times in their response, the plaintiffs appear to refer to other facts as specific unsafe working conditions, including the defendant's alleged failure to inspect or keep maintenance records and the defendant's decision to replace its Komatsu 685E trucks' magnetic limit switches with mechanical limit switches. (*See, e.g.*, *id.* at 6, 10, 11). However, the plaintiffs' statement above plainly identifies the use of a Komatsu 685E truck with overextending hydraulic cylinders and a freefalling truck bed as their alleged unsafe working condition. The plaintiffs confirm this in their attached responses to interrogatories. When asked to "[i]dentify each and every specific unsafe working condition that you claim existed in the workplace[,]" the plaintiffs only name "[t]he free falling and then stopping and extending of the bed of the dump truck operated by the plaintiff in a severe and violent whipping motion." (Pls.' Exhibit 40 [Docket 88-40], at 1-2). Thus, I proceed in my analysis with only this condition in mind.

**2. Violation of Statute, Rule, Regulation or Standard Specifically Applicable to Condition**

Having identified the plaintiffs' alleged condition, I must now determine whether a genuine

dispute of material fact exists as to the requirements of subparagraph (C). In order to satisfy subparagraph (C), the use of a Komatsu 685E truck with overextending hydraulic cylinders and a freefalling truck bed must violate a specifically applicable state or federal statute, rule, or regulation or industry safety standard. (*See* Pls.' Resp. [Docket 88], at 17).

The parties cite to different regulations and standards in regards to subparagraph (C). In its motion, the defendant contends that the plaintiffs allege that the condition is a violation of 30 C.F.R. § 77.1606(c)[2], WVMHS&T Code of State Rules § 56-3-42.3(a)-(b) and § 56-42.7(a), and the 685E Rock Truck Manual. However, in their response, the plaintiffs instead point to 30 C.F.R. § 56.14100(b), (c), and (d). They also appear to mention in footnote the "commonly accepted industry standard" of "[u]sing the maintenance manual supplied with equipment." (Pls.' Resp. [Docket 88], at 18 n.62).[3] Moreover, although they fail to discuss them within their response, the plaintiffs note additional federal regulations in their attached interrogatories. (*See* Pls.' Exhibit 40 [Docket 88-40], at 4-5 (naming to the following: "Mine Safety and Health Regulations: Part 75.1725 Machinery and Equipment; Operation and Maintenance[;]" "30 CFR 56/57.14100[;]" "30 CFR 56.57.14100(c) and (d)[;]" "30 CFR 77.1606(c)[;]" and "30 CFR § 75.1725(a)[.]")).

I will limit my analysis to the plaintiffs' allegations in their response. The deliberate intent

---

[2] The defendant cites to 30 C.F.R. § 1606(c). (*See* Def.'s Mem. in Supp. [Docket 79], at 9). I believe that the full citation should read 30 C.F.R. § 77.1606(c).

[3] In their response, the plaintiffs periodically mention the MSHA Safety Alert concerning Komatsu 680-E Trucks. According to the plaintiffs, the MSHA issued this Safety Alert after having received a report of a limit switch failure. The plaintiffs contend that it "mandat[es] the need to maintain the limit switches and to change the 6 bolt pattern end plates to a 12 bolt pattern on all trucks." (Pls.' Resp. [Docket 88], at 3 (Safety Alert attached as Exhibit 1 at Docket No. 88-1)). However, upon my reading, the Safety Alert is not mandatory in nature and instead advises on limit switch maintenance and recommends changing the 685E truck's cylinder bolt pattern. (*See* Pls.' Exhibit 1 [Docket 88-1], at 1 (using language such as "[m]ine operators should" and "[i]t is recommended that")). Regardless, the plaintiffs do not appear to argue in their response that a violation of this Safety Alert satisfies subparagraph (C) of West Virginia's deliberate intent statute. Therefore, I will not address such an argument in my analysis.

statute requires the specific unsafe working condition to be a violation of a state or federal regulation "whether cited or not." W. Va. Code § 23-4-2(d)(2)(ii)(C). However, Federal Rule of Civil Procedure 56 expressly states that I need not look beyond the parties' cited materials in ruling on a motion for summary judgment. *See* Fed. R. Civ. Pro. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Moreover, the plaintiffs have a burden that they must carry to survive summary judgment. *See Coe*, 2013 WL 140107, at *2 (stating that "'in order to withstand a motion for summary judgment, a plaintiff must make a *prima facie* showing of dispute on each of the five factors'" in West Virginia's deliberate intent statute); Fed. R. Civ. Pro. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute . . .").

**i. 30 C.F.R. 56.14100(b), (c), and (d)**

First, the plaintiffs allege that the condition violates 30 C.F.R. § 56.14100 (b), (c), and (d). Section 56.14100 provides:

> (a) Self-propelled mobile equipment to be used during a shift shall be inspected by the equipment operator before being placed in operation on that shift.[4]
>
> (b) Defects on any equipment, machinery, and tools that affect safety shall be corrected in a timely manner to prevent the creation of a hazard to persons.
>
> (c) When defects make continued operation hazardous to persons, the defective items including self-propelled mobile equipment shall be taken out of service and placed in a designated area posted for that purpose, or a tag or other effective method of marking the defective items shall be used to prohibit further use until the defects are corrected.
>
> (d) Defects on self-propelled mobile equipment affecting safety, which are not corrected immediately, shall be reported to and recorded by the mine

---

[4] The plaintiffs do not specifically discuss subsection (a) of 30 C.F.R. § 56.14100 in their response. However, I quote it for context.

8

> operator. The records shall be kept at the mine or nearest mine office from the date the defects are recorded, until the defects are corrected. Such records shall be made available for inspection by an authorized representative of the Secretary.

30 C.F.R. § 56.14100(b)-(d). On its face, this regulation lacks the level of specificity required under the law to withstand summary judgment. *Greene*, 663 F. Supp. at 114-15. Thus, I need not address whether the plaintiffs' alleged unsafe condition violates this regulation or whether this regulation applies to Apogee's coal mine.[5]

As noted above, subparagraph (C) of West Virginia's deliberate intent statute requires the statute, rule, regulation, or standard to be "specifically applicable to the particular work and working condition involved," as opposed to "generally requiring safe workplaces, equipment or working conditions." W. Va. Code § 23-4-2(d)(2)(ii)(C); *see, e.g.*, *Bowden v. Frito-Lay, Inc.*, 2010 WL 3835222, No. 5:09-cv-00914, at *2 (S.D. W. Va. Sept. 28, 2010) (J. Berger) (finding West Virginia Code section not specific enough for purposes of subparagraph (C)). Such a statute, rule, regulation, or standard "imposes a specifically identifiable duty upon an employer, as opposed to merely expressing a generalized goal" and "is capable of application to the specific type of work at issue." Syl. pt. 3, *McComas v. ACF Industries, LLC*, 232 W. Va. 19 (2013) (quoting Syl. pt. 3 of *Ryan v. Clonch Industries, Inc.*, 219 W. Va. 664 (2006)). It must be specific enough "[t]o put the employer on notice" so that a violation would amount to the "egregious conduct" that the West Virginia Legislature sought to make actionable under the deliberate intent statute. *Greene*, 663 F. Supp. at 115.

For example, in *Greene*, the court found a federal regulation lacked the specificity needed

---

[5] In its reply, the defendant argues that 30 C.F.R. part 56 is inapplicable to Apogee's coal mine. The defendant states that part 56 applies to surface metal and nonmetal mines, whereas part 77 particularly applies to coal mines.

9

to survive summary judgment. *Id.* In that case, an employee sued his employer after stepping on a broken tractor step and injuring his back and knee as a result. *Id.* at 113-114. The employee alleged that the broken step was a specific unsafe working condition that violated the following federal regulation:

> Parts and accessories shall be in safe and proper operation condition at all times. These include those specified in Part 393 of this subchapter and any additional parts and accessories which may affect safety of operation, including but not limited to, frame and frame assemblies, suspension systems, axles and attaching parts, wheels and rims, and steering systems.

*Id.* at 114-15 (citing 49 C.F.R. § 396.3(a)(1) (1985)). The court found that the regulation lacked sufficient specificity because it "d[id] not contain any standards or requirements applicable to steps in particular or entrances to tractors in general." *Id.* at 115.

Courts have also found regulations similar to the one at issue here to lack the specificity required for subparagraph (C). *See, e.g.*, *Brown v. Appalachian Mining, Inc.*, 141 F.3d 1157, 1998 WL 200317, at *1 (4th Cir. April 27, 1998) (unpublished opinion)[6]; *Baisden v. Omega Coal Co., LLC*, 2012 WL 259949, No. 2:11-cv-079, at *12 (S.D. W. Va. Jan. 27, 2012) (J. Copenhaver). For example, in a recent case, an employee sued his employer after he was struck in the head while operating roof bolting machinery. *Hunt v. Brooks Run Mining Company, LLC,* 2014 WL 4925321, Civil Action No. 1:13-cv-00433, at *1 (S.D. W. Va. Sept. 30, 2014) (J. Faber). The employee argued that the use of particular roof bolting tools violated an underground coal mine safety and health regulation, providing that "[m]obile and stationary machinery and equipment shall be maintained in safe operating condition and machinery or equipment in unsafe condition shall be removed from service immediately." *Id.* at *3 (citing 30 C.F.R. § 75.1725(a)); *see* 30 C.F.R. §

---

[6] *Brown* analyzes an older version of West Virginia's deliberate intent statute. As I explain above in regards to *Greene*, I do not find this to affect my analysis here.

10

75.1. As it had found previously in *Baisden*, the court decided that this regulation lacked the specificity required for subparagraph (C). *Hunt*, 2014 WL 4925321, at *3-4. The court agreed with *Baisden* in that it was "no more than a regulation 'generally requiring' that underground mining equipment be maintained in safe operating condition." *Id.* (quoting *Baisden*, 2012 WL 259949, at *12) (quotations omitted).

In an unpublished opinion concerning a mining accident, the Fourth Circuit analyzed a textually identical federal regulation to the one at issue in *Hunt* and *Baisden* that instead applied to "surface coal mines" and "surface work areas of underground coal mines." *Brown*, 1998 WL 200317, at *1, 3, 4, n.2 (citing to 30 C.F.R. § 77.404(a)); 30 C.F.R. § 77.1. The court in *Brown* found that "this regulation is exactly the kind of general safety provision that the [deliberate intent] statute itself declares insufficient." *Id.* at *4.

Similarly, here, the regulation raised by the plaintiffs is "the kind of general safety provision that the [deliberate intent] statute itself declares insufficient." *Id.* Just as the regulations at issue in *Brown*, *Hunt*, and *Baisden*, the regulation alleged by the plaintiffs in this case requires that equipment generally remain safe and taken out of service if unsafe. Like the regulation at issue in *Greene* that did not relate particularly to steps or tractor entrances, 30 C.F.R. § 56.14100(b), (c), and (d) do not relate particularly to a truck's hydraulic cylinders or bed. This regulation fails to satisfy the "high degree of specificity required by the statute." *Brown*, 141 F.3d, at *1.

Moreover, the cases cited by the plaintiffs in support of their position are of no consequence. According to the plaintiffs, 30 C.F.R. § 56.14100(c) is specifically applicable under *Skaggs v. Kroger Company/Kroger Limited Partnership*. 788 F. Supp. 2d 501 (S.D. W. Va. April 21, 2011) (J. Copenhaver). In *Skaggs*, an injured grocery store employee raised certain OHSA

11

regulations under subparagraph (C) which required unsafe trucks to be removed from service and employers to ensure the competency and training of its truck operators. *Id.* at 503-04, 509 (citing 29 C.F.R. § 1910.178(p), (q)(1), (l)(1)(i)-(ii)). The court found these regulations to be sufficiently specific for purposes of subparagraph (C). *Id.* at 509.

However, unlike the regulations at issue here, the regulations in *Skaggs* applied only to "[p]owered industrial trucks[.]" *See generally* 29 C.F.R. § 1910.178. Here, the plaintiffs point to regulations that apply to "*any* equipment, machinery, and tools," with one section requiring reporting and record-keeping for "defects on self-propelled mobile equipment" in particular. 30 C.F.R. § 56.14100(b)-(d) (emphasis added). "Mobile equipment" is defined broadly under the code as "wheeled, skid-mounted, track-mounted, or rail-mounted equipment capable of moving or being moved." 30 C.F.R. § 56.2. The regulation from *Skaggs* is far more specific in scope, particularly applying to "fork trucks, tractors, platform lift trucks, motorized hand trucks, and other specialized industrial trucks powered by electric motors or internal combustion engines" and "not apply[ing] to compressed air or nonflammable compressed gas-operated industrial trucks," or "farm vehicles," or "vehicles intended primarily for earth moving or over-the-road hauling." 29 C.F.R. § 1910.178. Even the plaintiffs appear to recognize the general nature of 30 C.F.R. § 56.14100 in their response, writing that it "requires *any piece of mobile equipment* with a mechanical problem be downed and tagged out and not be put back in service until the problem is fixed." (*See* Pls.' Resp. [Docket 88], at 4) (emphasis added)).

The plaintiffs also claim that "this case fits squarely into *McComas v. ACF*[.]" (Pls.' Resp. [Docket 88], at 18, n.61); *see McComas v. ACF*, 232 W. Va. 19 (2013). I disagree. In *McComas*, a welder sued his employer after suffering severe burns as a result of a blast from an electrical box

12

with worn insulation. *McComas*, 232 W. Va. at 21, 25. The box had been installed approximately five or six decades before the accident and had not once been inspected by the employer. *Id.* at 22, 24. The welder argued that the employer violated two Electrical Equipment Maintenance Standards of the American National Standards Institute/National Fire Protection Association, which required employers to inspect electrical equipment in the workplace periodically and "[i]nsulation integrity [to] be maintained." *Id.* at 23, 26. Accordingly, the court found that these standards were sufficiently specific. *Id.* at 26. The standards raised in *McComas* narrowly dealt with the specific unsafe working condition—namely, electrical equipment with poor insulation. In contrast, 30 C.F.R. § 56.14100 does not particularly apply to hydraulic cylinders or truck beds.

Although neither party cited it in support of their argument, I recall a previous case that bears relevance to this issue. *Hoffman v. Monsanto Company*, 2007 WL 2984692, No. 2:05-cv-00418, at *7 (S.D. W. Va. Oct. 11, 2007) (J. Goodwin)[7]. In *Hoffman*, I found a "broad and amorphous" federal regulation to satisfy subparagraph (C). *Id.* However, this prior ruling is distinguishable from the instant case. In *Hoffman*, an employee alleged that he developed non-Hodgkin's lymphoma and cardiac failure as a result of exposure to chemicals during his employment. *Id.* at *1. With regard to subparagraph (C), the plaintiffs argued that the employer's failure to "establish and maintain a respiratory protection program" violated a federal regulation, which stated:

> Respirators shall be provided by the employer when such equipment is necessary to protect the health of the employee. The employer shall provide the respirators which are applicable and suitable for the purpose intended. The employer shall be responsible for the establishment and maintenance of a respiratory protective program which shall include the requirements outlined in [other portions of the regulation].

---

[7] *Hoffman* analyzes an older version of West Virginia's deliberate intent statute. As I explain above in regards to *Greene* and *Brown*, I do not find this to affect my analysis here.

13

*Id.* at *6 (quoting 29 C.F.R. 134(a)(2)). Relying on the West Virginia Supreme Court's decision in *Ryan v. Clonch Industries*, I decided that this regulation satisfied subparagraph (C) because it "'impose[d] a specifically identifiable duty' that [was] merely 'capable of application to the specific type of work at issue.'" *Id.* at *7 (citing *Ryan*, 219 W. Va. at 764).

However, here, 30 C.F.R. § 56.14100 does not impose a "specifically identifiable duty" akin to the regulation in *Hoffman*. The specific unsafe working condition alleged by the employee in *Hoffman* was the employer's failure to create a respiratory protection program, and the regulation at issue imposed a duty on employers to do just that. Here, the specific unsafe working condition alleged by the plaintiffs is the use of the truck with overextending cylinders and a freefalling bed, yet the regulation at issue requires employers to correct defects on "any equipment, machinery, and tools[,]" to remove unsafe equipment from service, and to report and keep records on unsafe "self-propelled mobile equipment." 30 C.F.R. § 56.14100(b)-(d). Any identifiable duty imposed on the defendant by 30 C.F.R. § 56.14100 lacks the specificity of that within the regulation in *Hoffman*.

Therefore, the regulation raised by the plaintiffs here does not contain that level of specificity required under subparagraph (C) and, thus, fails to satisfy subparagraph (C) for purposes of summary judgment.

**ii. Other Federal Regulations**

Even if the plaintiffs had raised and argued the other regulations noted in their interrogatories, summary judgment would still be proper.

First, 30 C.F.R. § 57.14100 is identical in text to the regulation that I discussed above, 30 C.F.R. § 56.14100, except it applies to underground instead of surface mines. Therefore, it also

14

lacks the specificity required to survive summary judgment.

Second, 30 C.F.R. § 75.1725(a) is the same regulation that the court found to lack specificity in *Hunt* and *Baisden*.

Third, 30 C.F.R. § 77.1606(c) requires that "[e]quipment defects affecting safety shall be corrected before the equipment is used" and applies to mobile loading and hauling equipment. *See* 30 C.F.R. § 1606(a) (noting application to "[m]obile loading and haulage equipment"). Based on my reasoning above in regards to 30 C.F.R. § 56.14100, such a general safety requirement is not specific enough for subparagraph (C).

30 C.F.R. § 77.1606(b) *may* be more specific. Section 77.1606(b) states, among other things, that "ropes and supports shall be inspected as recommended by the manufacturer or as physical conditions warrant." 30 C.F.R. § 77.1606(b). The Komatsu 685E truck's hydraulic cylinders may constitute "support" in theory. However, besides the fact that the plaintiffs do not cite to 30 C.F.R. § 77.1606 in their response at all, the plaintiffs name only subsection 30 C.F.R. § 77.1606(c) in their attached interrogatory responses. As I explain above, the plaintiffs have a burden that they must carry on summary judgment. *See Coe*, 2013 WL 140107, at *2; Fed. R. Civ. Pro. 56(c)(1)(A). Even though a court "may consider other materials in the record" in ruling upon a motion for summary judgment, it "need consider only the cited materials." Fed. R. Civ. Pro. 56(c)(3). The plaintiffs must make a *prima facie* showing of subparagraph (C) at the summary judgment phase, and the court need not do it for them.

Therefore, summary judgment is nevertheless proper.

### iii. 685E Komatsu Maintenance Manual

Finally, in a footnote, the plaintiffs also appear to allege a violation of the "commonly

15

accepted industry standard" of "[u]sing the maintenance manual supplied with equipment." (Pls.' Resp. [Docket 88], at 18, fn.62). The plaintiffs state in the same footnote that "Apogee readily admits it ignores the mandatory maintenance requirement to check the bed limit switch daily thereby placing its employees at risk for serious injury." (*Id.*). The only cite they provide for this alleged industry standard is one page in their expert Robert Reed's report. (*See id.*). On that page in regards to the maintenance manual, Mr. Reed states that "[t]he Komatsu Maintenance manual lists the service and inspection guidelines which are specific to truck 308 and the warning of using non-OEM parts in critical systems of the truck. These items are specific consensus standards of the maintenance industry for safety in operation of the specific equipment." (Pls.' Exhibit 8 [Docket 88-7], at 7).

Under a common sense view, it seems reasonable that an industry would adopt a standard to use maintenance manuals that are provided with equipment. However, "common sense" is not enough. *Coe*, 2013 WL 140107, at *9 (finding plaintiff's alleged industry standard based on "common sense" to be "speculative and unsupported by any competent corroborating evidence" and, thus, "insufficient to meet his *prima facie* burden" to overcome summary judgment). Subparagraph (C) expressly requires "a commonly accepted and well-known safety standard within the industry or business of the employer" to be "demonstrated by competent evidence of written standards or guidelines which reflect a consensus safety standard in the industry or business." W. Va. Code § 23-4-2(d)(2)(ii)(C); *see Hunt*, 2014 WL 4925321, at *4-6; *Coe*, 2013 WL 140107, at *9. Citing to one page in an expert report which conclusively states that items within a manual are "specific consensus standards of the maintenance industry" hardly constitutes "competent evidence" under the deliberate intent statute. (*See* Pls.' Exhibit 8 [Docket 88-7], at 7).

Both parties have filed over 380 pages in exhibits; however, a plaintiff may not carry his or her burden by submitting hundreds of pages of exhibits to the court and hope that the court finds something within it to support its argument. Federal Rule of Civil Procedure 56 instead states that parties must "cit[e] to *particular parts* of materials in the record[.]" Fed. R. Civ. Pro. 56(c)(1) (emphasis added). The court is not required to sort through this evidence and pick out that which supports the plaintiffs' claim.

The plaintiffs have failed to "make a *prima facie* showing of dispute" on subparagraph (C). *Coe*, 2013 WL 140107, at *2. Therefore, no genuine dispute of material fact exists as to subparagraph (C), and summary judgment on the plaintiffs' deliberate intent claim is accordingly **GRANTED**.

### B. Loss of consortium

Because summary judgment is proper as to the plaintiffs' deliberate intent claim, Ms. Bevins' loss of consortium claim is **DISMISSED**.

### IV. Conclusion

Thus, for the reasons explained above, the Defendant's Motion for Summary Judgment [Docket 78] is **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 17, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

17